**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| SHEM MALMQUIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-CV-2416-JPM-cgc |
| | ) | |
| THE HEARST CORPORATION AND | ) | **ORAL ARGUMENT REQUESTED** |
| HEARST COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

On October 2, 2009, Defendants Hearst Corporation and Hearst Communications, Inc., the publisher of Redbook Magazine (collectively, "Hearst"), filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In support of that dismissal motion, Hearst submits this memorandum of law and states as follows:

**INTRODUCTION**

This case is an extension of a very public and highly contentious domestic dispute between ex-spouses Shem and Danielle Malmquist over the dissolution of their marriage and the custody of their two young sons.  Their dramatic dispute has led to numerous off-shoot litigations filling courthouse files on both coasts, has played out over the public airwaves and raged over the Internet.   Now Hearst is named as yet another litigant caught in the serial Malmquist litigation for alleged libel, defamation and negligent

infliction of emotional distress.  One look at the Complaint, however, shows that

Plaintiff's claims have no merit whatsoever, going so far even to challenge as defamatory

matters that he himself has admitted in open court.  There is no basis to any of Plaintiff's

claims and this Court should dismiss the Complaint with prejudice.

At the heart of this action is an article of significant public concern published by

*Redbook* Magazine entitled "Invisible Violence" (the "Article"), which reported the

accounts of three women who came to believe that they had been emotionally abused.

One of the women profiled was Danielle Malmquist, who recounted her perspective of

her brief marriage to "John."[1]  The Article, a copy of which is incorporated into the

Complaint by reference,[2] told readers that emotional or psychological abuse, the epitome

of individual perspective and opinion, is a "shades-of-gray umbrella term" that is "tricky

to identify," "hard[] to determine," and ultimately "subjective."  Four experts weighed in,

and the Article explained to readers what emotional abuse "might feel like."  The experts

drew a sharp line between emotional abuse and physical abuse, noting that physical abuse

is a crime where "there's proof," while emotional abuse is not a crime and, as the title of

the Article relates, is invisible, amorphous and not subject to proof.

Plaintiff's Complaint, which takes issue with his ex-wife's account of their

marriage in the Article, is at odds with decades of black-letter law establishing that

expressions of opinion – a cornerstone of free debate central to our democratic society –

---

[1] *Redbook* Magazine changed the names of the featured women's partners in the Article.

[2] A true and correct copy of the Article is attached as **<u>Exhibit A</u>**.  <u>See</u> Whitney Joiner, <u>Invisible Violence</u>, *Redbook* Magazine, October 2008, at 190.  Because the Article is referred to in Plaintiff's Complaint, is central to his claims, and the allegations are expressly premised on the Article's content, the Article is properly considered a part of the Complaint and attached to this motion to dismiss.  <u>See</u> <u>Weiner v. Klais & Co.</u>, 108 F.3d 86, 88-89 (6th Cir. 1997).  The Court may, of course, take judicial notice of the Article as well.  <u>See</u> Fed. R. Evid. 201(b).

are not actionable.  It is also at odds with Plaintiff's own admissions in open court during his divorce proceedings.

As set forth in Point I below, Plaintiff has failed to state a claim for libel and defamation on numerous grounds.  First, the Article is the expression of protected, non-actionable opinion.  It makes clear in unmistakable terms that whether or not a person is the victim of "emotional abuse" could never be proven true or false: it is based on an individual's perception and feelings and is entirely subjective.  Second, not one of the Article's individual statements challenged by Plaintiff can form the basis of a defamation claim: they are not capable of defamatory meaning, not "of and concerning" Plaintiff, and/or true, based in part on his own admissions in Tennessee court.

As discussed in Point II, Plaintiff's negligent infliction of emotional distress claim is an attempt to end-run the well-established statutory, common law and constitutional limitations on defamation claims, and should be rejected.  Hearst is not aware of a single Tennessee case permitting recovery for negligent infliction of emotional distress when the gravamen of the complaint is for defamation.  The reason is clear:  If permitted, litigants would routinely sidestep the stringent legal safeguards afforded free speech by recasting their claims in simple negligence.  Negligence is but a subsidiary *element* of fault subsumed within the defamation cause of action; it provides no independent basis to redress reputational and emotional injury based on speech.  Because any amendment to the Complaint would be futile, the Complaint should be dismissed with prejudice.

## THE ALLEGATIONS OF THE COMPLAINT AND THE ARTICLE RELIED UPON

In its October 2008 edition of *Redbook* Magazine, Hearst published the article "Invisible Violence," which explored the amorphous, undefined concept of emotional or

psychological abuse.  (Complaint ¶ 19; Article)   The Article profiled three women, including Danielle Malmquist, each of whom believed they had been in emotionally abusive relationships.  (Article)  The Article reported on the women's perspectives in each of these specific relationships, as well as the opinions of four experts in the field. (Id.)  According to the Article, emotional abuse is "subjective," based on "perception," and is a "shades-of-gray umbrella term that includes a host of different behaviors." (Id. at 193-94, 196)  "Tricky to identify" and "hard[] to determine," emotional abuse could include "eyes rolled in annoyance," "[n]ame-calling" and "condescending" behavior for which there is no "proof" (as there is in cases of physical abuse), "[t]hrowing rageful fits and tantrums" and mostly "can't be reported to the police."  (Id. at 193-94)  The Article listed bullet points of how an alleged victim of emotional abuse "might feel," which included feeling as if "[y]ou're being treated like a child" and as if "[y]ou have to walk on eggshells around your partner." (Id. at 194)

     The Article recounted Danielle Malmquist's perspective of her short marriage to "John," in which she opined that she was the victim of emotional abuse.  (Article at 190, 193)  Written from Danielle's viewpoint and voice, the Article told her story from their courtship, to children, marriage, her husband's adultery, and their ultimate separation. (Id.)  It conveyed Danielle's opinions that John was "a little jealous" while they dated, that he criticized her weight and her housekeeping after the birth of their first child, that he rolled his eyes at her, and had "rage-filled explosions."  (Id.)  The Article told how Danielle questioned her sanity and walked on eggshells around her husband: *"What am I doing to make him this angry?*  Danielle asked herself when John berated her. . . . *Is he right?  Am I bad mom? Am I going crazy?*  she wondered."  (Id. at 193 (original

emphasis))  According to the Article, Danielle did not believe there was any "abuse" until her legal advocate offered the view that emotional abuse existed because Danielle had been, among other things, "disrespected," "trivialized" and "yelled . . . at." (<u>Id</u>.)

On June 24, 2009, Plaintiff filed a Complaint against Hearst Corporation and Hearst Communications, Inc. for libel, defamation and negligent infliction of emotional distress arising out of the publication of the Article.  The Complaint alleges that the Article falsely portrays Plaintiff as an emotionally abusive spouse based on twelve allegedly false and defamatory statements contained in the Article (some of which the Article does not even contain).  Those twelve alleged statements are set forth in paragraph 28 and lettered "a" through "l" as follows:

a.  Plaintiff was ***"jealous and became furious because [a short time into their relationship Danielle] went to a play with [a male friend], made repeated phone calls to her because of this, and later sent her flowers and sought her forgiveness of his supposed misconduct."***  (Complaint ¶ 28(a))  Plaintiff alleges none of this was true.  (<u>Id</u>.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"<u>The Jealousy Statement</u>."**

b.  ***"Danielle became pregnant by [Plaintiff] five (5) months after [the Jealousy Statement], which was said to have happened 'a few months into the relationship.'"***  (Complaint ¶ 28(b))  According to Plaintiff, this statement is false because he alleges that Danielle became pregnant by him one month after they met, she got an abortion, then became pregnant again and their son Avin was born in January 2004, after a full term pregnancy.  (<u>Id</u>.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"<u>The Pregnancy Statement</u>."**

c.  Plaintiff ***"proposed marriage to Danielle Malmquist when she told him she was pregnant and that Danielle Malmquist 'certain she wanted to have the baby' married him."***  (Complaint ¶ 28(c))  Plaintiff complains that the statement is false because their child was born in January 2004, ten months before their marriage.  (<u>Id</u>.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Marriage Proposal Statement."**

d. Plaintiff ***"forced Danielle Malmquist to quit her job to stay home with the baby."*** (Complaint ¶ 28(d))   Plaintiff alleges that Danielle quit working voluntarily.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as one of **"The Employment Statement."**

e. Plaintiff ***"found fault with Danielle Malmquist for gaining weight, failing to prepare dinner, and being a poor housekeeper, and it states that he 'rolled his eyes' and belittled her at comments she made in social situations.***" (Complaint ¶ 28(e))  Plaintiff alleges none of this is true.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Housekeeping and Eye Roll Statements."**

f. Plaintiff had ***"rage filled explosions***." (Complaint ¶ 28(f))  Plaintiff contends instead that there were two incidents where Danielle, not Plaintiff, became enraged and violent. (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Rage Statement."**

g. Danielle ***"wished she could get an outside perspective, but she'd stopped calling her sisters and her friends."*** (Complaint ¶ 28(g))   According to Plaintiff, this statement is false because Danielle frequently communicated by e-mail and cell phone with her family, friends, and others.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Communication Statement."**

h. The couple had ***"a four year marriage."***  (Complaint ¶ 28(h))   Plaintiff alleges that "the marriage took place in October 2004, the divorce was filed in March of 2005, and the divorce decree was granted in 2007."  Plaintiff thus alleges they had a three year marriage.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Marriage Statement."**

i. ***"Danielle Malmquist caught [Plaintiff] in an affair and filed for divorce."*** (Complaint ¶ 28i))  Plaintiff alleges that the statement is false because Plaintiff filed for divorce (not Danielle) and the counterclaim for divorce did not allege adultery.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Adultery Statement."**

j. The reference in the Article to *a "legal advocate" named Rosa*. (Complaint ¶ 28(j). Plaintiff alleges that Rosa is "totally fictitious."  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Rosa Statement."**

k. ***"Assertions to the effect that Danielle Malmquist coped by 'walking on egg shells' and endured emotional abuse for years after the birth of their second child, who was born on February 24, 2005."***  (Complaint ¶ 28(k))  Plaintiff alleges this is false because Plaintiff filed for divorce two weeks after the birth of their second child due to Danielle's abusive conduct and they ceased residing together as husband and wife.  (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Timing Statement."**

l. ***Danielle founded an emotional abuse organization called "In Defense of the Family."*** (Complaint ¶ 28(l))  Plaintiff alleges this is false. (Id.)

- For the Court's convenience, this challenged statement will hereinafter be referred to as **"The Organization Statement."**

As set forth below, taken together and individually, not a single one of the aforementioned Statements can form the basis of a valid libel or defamation claim against Hearst and the Complaint should be dismissed.

## LAW AND ARGUMENT

In <u>Hensley Mfg., Inc. v. Propride, Inc.</u>, No. 08-1834, --- F.3d ---, 2009 WL 2778220 (6th Cir. Sept. 3, 2009) (copy attached as **Exhibit B**), the Sixth Circuit clarified the standard on a motion to dismiss in light of the United States Supreme Court's recent rulings in <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  According to the Sixth Circuit:

> Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." And although we must accept all well-pleaded factual allegations in the complaint as true, we need not "'accept as true a legal conclusion couched as a factual allegation.'"

Id. at *3 (quoting Twombly, 550 U.S. at 555, 570;[3] Iqbal, 129 S. Ct. at 1949-50) (internal citations omitted). Because the heightened pleading standard applicable to all motions to dismiss is not met in this case, see Iqbal, 129 S. Ct. at 1953, this Court must dismiss the Complaint pursuant to Rule 12(b)(6).

## I.   PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL AND DEFAMATION[4]

To state a claim for defamation, Plaintiff must here allege "(1) a statement, (2) published by a party with knowledge that the statement was false and defaming to the other or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Brock v. Positive Changes Hypnosis, LLC, 589 F. Supp. 2d 974, 984 (W.D. Tenn. 2008) (McCalla, J.) (citing Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999)). Here, Plaintiff cannot state a claim

---

[3] Indeed, in Twombly, the Supreme Court stated that the often-quoted observation in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard" and "has earned its retirement." 550 U.S. at 563.

[4] Plaintiff alleges two separate causes of action for libel and defamation, one statutory and one under Tennessee common law. Because libel is the written form of defamation, hereinafter the two causes of action will be referred to as "defamation." See, e.g., Davis v. The Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

for defamation as a matter of law first and foremost because the Article is non-actionable opinion, and in any event each challenged statement is (1) not capable of defamatory meaning; (2) not "of and concerning" Plaintiff; and/or (3) substantially true.

## A.    <u>The Constitution Prohibits Claims Based on Non-Verifiable Opinion</u>

Plaintiff cannot support a claim for defamation based on his ex-wife's view that he was emotionally abusive.  Danielle Malmquist's opinions – that she "walked on eggshells" around Plaintiff, that her husband was "jealous," "rolled his eyes" at her, was critical of her housekeeping and weight, and ultimately that she felt emotionally abused – are inherently subjective and cannot be proven true or false.  Such opinions are fully protected as a matter of constitutional law, and are not actionable as a matter of common law.  Whether a statement constitutes protected opinion is an issue of law for the Court. <u>See</u>, <u>e.g.</u>, <u>Stilts v. Globe Int'l, Inc</u>., 950 F. Supp. 220, 223-24 (M.D. Tenn. 1995), <u>aff'd</u>, 91 F.3d 144 (6th Cir. 1996) (unpublished).

"[A]n essential element of a cause of action for defamation . . . [is] a false and defamatory statement."   <u>Stones River Motors, Inc. v. Mid-South Publ'g Co</u>., 651 S.W.2d 713, 717 (Tenn. Ct. App. 1983).  Therefore, a statement that cannot be proven true or false, or that would in any event be recognized as offering an opinion rather than asserting a fact, cannot be the subject of a claim for libel.  <u>See</u>, <u>e.g.</u>, <u>Milkovich v. Lorain Journal Co</u>., 497 U.S. 1, 19-20 (1990); <u>Brock</u>, 589 F. Supp. 2d at, 984-85 (citing statements of opinion).  This fundamental limitation completely bars the defamation claims advanced by Plaintiff here.

Tennessee courts long ago recognized that the First Amendment bars libel claims if they are not based on verifiably false facts.  In <u>Stones River Motors</u>, 651 S.W.2d 713 (1983), the court explained that it is "a matter of constitutional law[] that statements of

opinion or characterizations based upon disclosed nondefamatory facts are not defamatory even though they are stated in strong or abusive terms."  Id. at 721.  The U.S. Supreme Court affirmed this First Amendment limitation in Milkovich, holding that statements of opinion are protected unless they contain "a provably false factual connotation."  497 U.S. at 20.  Thus, for example, the statement that a politician "shows his abysmal ignorance by accepting the teachings of Marx and Lenin" is not actionable under the First Amendment, because it cannot be proven true or false.  Id.

A statement is protected as opinion if it has no precise and definite meaning that objectively can be proven true or false.  See, e.g., Stilts, 950 F. Supp. at 223-24 (citing Milkovich); see also Standing Comm. on Discipline v. Yagman, 55 F.3d 1430, 1440 (9th Cir. 1995) (calling one a "bully" and "ill-tempered" is protected opinion); Bianchi v. Commonwealth Childcare Corp., No. 97-2023-B, 2000 WL 1508175, at *2-3 (Mass. Super. Ct. Aug. 15, 2000) (a statement questioning plaintiff's "emotional stability" is protected opinion because "the concept of 'emotional stability' calls for a wide range of subjective judgment" and it "depend[s] upon the observer's point of view;" copy attached as **Exhibit C**); Gosling v. Conagra, Inc., No. 95-C-6745, 1996 WL 199738, at *2-6 (N.D. Ill. April 23, 1996) (statements that plaintiff was "insulting" "nasty beyond belief" "arrogant" and "rude, mistrustful" were protected opinion; copy attached as **Exhibit D**).

In Revis v. McClean, 31 S.W.3d 250 (Tenn. Ct. App. 2000), the Tennessee Court of Appeals held written statements by a company's president and COO about an employee to be non-actionable opinion.  In the challenged letter that had been posted for all to see in the company plant, the COO described the employee's facial expressions during a meeting as "menacing, threatening, denigrating, contemptuous and

insubordinate" in nature.   The COO wrote that because the employee had been suspended for his "temper" and "making abusive and intimidating comments to others," the employee's conduct caused the COO "concern for [his] safety, as well as the safety of the others in the room."   The letter stated that the COO "felt insulted and offended" by the employee's conduct.   The Tennessee Court of Appeals held that the letter was non-actionable opinion: "The description of the look on [the plaintiff's] face is nothing more than [the COO's] opinion, and the effect it produced on him is an opinion based on the disclosed non-defamatory fact that [the plaintiff] had been suspended for threatening and cursing another employee."   Id. at 253.

Similarly, the challenged statements "should be judged within the context in which they are made" and should be "read as a person of ordinary intelligence would understand them in light of the surrounding circumstances."   Id.   Here, in addition to the challenged statements' indefinite and non-verifiable nature, the magazine context of the Article written from the complaining women's perspective, in their voice, confirms that they were offered as opinion rather than assertions of fact.

In Partington v. Bugliosi, 56 F.3d 1147 (9th Cir. 1995), the context of first-person narrative and personal perspective was found to be key.   There, the Ninth Circuit Court of Appeals held that the First Amendment protected statements in a book and docudrama about a murder trial because the contexts in which they were made did not imply the assertion of objective facts and were not capable of being proved true or false.   The Court found that because the book outlined the trial defense attorney author's own version of what took place during the trial, "a reader would expect him to set forth his personal theories" about the trial.   Id. at 1153.   It also found that the murder trial subject matter of

the book and docudrama was "inherently ambiguous" and open to a "number of varying rational interpretations." Id. at 1154. Taken together, the Ninth Circuit concluded that the context negated that there was a false assertion of fact and that the First Amendment requires that authors have "substantial latitude" in their writings. See id.

Applying these principles readily confirms that Plaintiff has no defamation claim based on the Article containing his ex-wife's opinion that she was emotionally abused. The context of Danielle's personal account – which even relayed the internal dialogue she had with herself – signalled to readers that the Article was premised on the personal views of the featured women. Moreover, the subject matter is inherently subjective and incapable of being proved true or false, and obviously so to any ordinary reader of the Article. Unlike physical abuse, the Article told readers, emotional abuse is not a crime or susceptible to proof. Indeed, there is no objective standard on which to measure the extent or import of an eye-roll, the critical nature of a spouse's comments about housekeeping skills or weight gain, or the extent to which a spouse felt she walked on eggshells around her partner. The Article clearly communicates matters of personal opinion protected by the First Amendment and Plaintiff's defamation claims fail as a matter of law.

**B.      Challenged Statements Are Not Capable of Defamatory Meaning**

A statement cannot form the basis of a defamation claim if it is not capable of defamatory meaning. See, e.g., Revis, 31 S.W.3d at 253. Whether a statement is capable of being defamatory is a question of law for the court. Id.; see also Brock, 589 F. Supp. 2d at 986 (citing Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 419 (Tenn. 1978)).

At the outset, in determining whether the challenged statements are reasonably capable of defamatory meaning, this Court must look to the words themselves and is not

bound by Plaintiff's interpretation of them.  Stones River Motors, 651 S.W.2d at 719.  "If the words do not reasonably have the meaning the plaintiff ascribes them, the court must disregard the latter interpretation."  Id.  This is true of the Employment and Timing Statements.  Plaintiff contends that the Article:

- "contains a false statement that [Plaintiff] forced Danielle Malmquist to quit her job to stay home with the baby, when in fact she quit working voluntarily" (Complaint ¶ 28(d)); and that

- Danielle "endured emotional abuse for years after the birth of their second child, who was born February 24, 2005, when in fact [Plaintiff] filed the divorce two weeks after his birth due to the violent and abusive conduct of Danielle Malmquist and they ceased residing together as husband and wife." (Complaint ¶ 28(k)).

The Article says no such things.   The Article provides that Plaintiff suggested Danielle stay home with their newborn and never says that she was "forced."  See Article at 193.  Moreover, there is nothing in the Article even remotely to suggest that Danielle endured "years" of anything after the birth of their second child.  See id.  Plaintiff's interpretations all can be disregarded.

To be capable of defamatory meaning, a communication:

> must constitute a **serious** threat to the plaintiff's reputation.  A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing.  The words must reasonably be construable as holding the plaintiff up to **public hatred, contempt or ridicule**.  They must carry with them an element "of **disgrace**."

Stones River Motors, 65 S.W.2d at 719 (citing W. Prosser, *Law of Torts,* § 111, p. 739 (4th Ed.1971)) (emphasis added).  How long the couple had dated before Danielle became pregnant (Pregnancy Statement), how long they were married (Marriage Statement), whether a legal advocate or public interest organization exists (Rosa and Organization Statements), and whether Danielle continued to speak to her friends and

family (Communication Statement), do nothing to impact, let alone pose a "serious threat" to Plaintiff's reputation.

It is also difficult to see what possibly could be defamatory about the Marriage Proposal Statement.  Oddly, Plaintiff suggests it is damaging to his reputation to say that his first child with Danielle Malmquist was born during their marriage, insisting the child was born out of wedlock.  Specifically, Plaintiff takes issue with the statement that the couple married before their first child was born, alleging the child was born "ten months before [Plaintiff] and Danielle Malmquist were married."  (Complaint ¶ 28(c)).  Whatever the sequence, a statement that Plaintiff married his wife before she gave birth to their child certainly does not inject Plaintiff with an element of "disgrace."

Many of the remaining challenged statements, while Plaintiff might find them annoying or embarrassing, are typical of what occurs in many American households. Statements that a spouse is merely "jealous" (the Jealousy Statement) and participated in (or even instigated) a domestic dispute in which he was filled with "rage" (the Rage Statement) simply are not sufficient to subject Plaintiff to "public hatred, contempt or ridicule."  Neither does criticism of a spouse's weight gain and poor housekeeping skills (Housekeeping and Eye Roll Statement) or a spouse's suggestion that their partner stay home to provide full-time child care to their newborn (Employment Statement).  In short, there is nothing about these Statements that hold Plaintiff up to public ridicule or hatred. See, e.g., Hampton v. Tennessee Bd. of Law Examiners, 770 S.W.2d 755, 763 (Tenn. Ct. App. 1988) ("We fail to see how the failure to pass the bar examination is a serious threat to someone's reputation").

**C.**      **Challenged Statements Are Not "Of and Concerning" Plaintiff**

Plaintiff must establish that the challenged statements are "of and concerning" the Plaintiff, that is, that a statement is in fact understood by a third person as referring to the plaintiff.  See Stones River Motors, 651 S.W.2d at 717 ("'It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff.'") (quoting Insurance Research Serv., Inc. v. Associates Fin. Corp., 134 F. Supp. 54, 61 (M.D. Tenn. 1955)).  Neither the Communication Statement, Rosa Statement, nor the Organization Statement say anything about Plaintiff, and all are non-actionable as not "of and concerning" him.

According to the Communication Statement, Danielle "wished she could get an outside perspective, but she'd stopped calling her sisters and her friends."  (Complaint ¶ 28(g)).  Plaintiff alleges that the Communication Statement is false because Danielle continued to e-mail her family and friends and communication with them via a cellular telephone that he provided.  (Id.)  Whether or not that is true is wholly irrelevant to a defamation claim since the Communication Statement says nothing whatsoever about Plaintiff and cannot possibly be "of and concerning" him as a matter of law.

The same is true of the Rosa Statement.  According to the Article, Danielle met with a legal advocate named Rosa to discuss the separation agreement between her and Plaintiff.   (Article at 193).  Plaintiff contends that Rosa is fictitious.  (Complaint ¶ 28(j)).  Again, whether or not Rosa actually exists is irrelevant to Plaintiff's defamation claim since neither the statement nor the fact of her existence (or non-existence) are of and concerning Plaintiff.

Neither could a third person understand the Organization Statement to be about Plaintiff.  The Article provides that Danielle had "cofounded an organization called In

Defense of the Family, a nonprofit group that guides abused women and families through the family court system." (Article at 196). Plaintiff contends that this is somehow defamatory because "a search of the internet and public records discloses that the organization having this name is a conservative Christian group organized against gay marriage." (Complaint ¶ 28(l)). Whatever the organization's mission, it is irrelevant here. Like the Communication and Rosa Statements, the Organization Statement is not "of and concerning" Plaintiff and is non-actionable.

**D.** **Challenged Statements Are Substantially True**

It is black-letter law in Tennessee that a statement that is true or substantially true cannot as a matter of law support a claim for defamation. <u>Stones River Motors</u>, 65 S.W.2d at 719. In a defamation action against the press, it is the plaintiff's burden to prove falsity. <u>Philadelphia Newspapers, Inc. v. Hepps</u>, 475 U.S. 767, 776 (1986) (holding that there is a "constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages"); <u>Wilson v. Scripps-Howard</u>, 642 F.2d 371, 376 (6th Cir. 1981) (a private figure plaintiff must prove that a statement on a matter of public concern is false and negligently published). Plaintiff cannot meet this constitutional burden if the publication is found to be substantially true.

Courts must look to the "gist" or "sting" of the article to determine substantial truth. <u>Stones River Motors</u>, 65 S.W.2d at 719-20. The inquiry is whether the challenged statement "'as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" <u>Id</u>. (quoting <u>Memphis Publ'g Co</u>., 569 S.W.2d at 420). The Adultery, Pregnancy and Marriage Statements are substantially true as a matter of law.

First, it is remarkable that Plaintiff claims that the Adultery Statement is defamatory when he has admitted in open court that he was having sexual relations with another woman while married to Danielle.  During his 2007 divorce proceeding in this State, Plaintiff testified as follows:

> "[Danielle's Attorney ("DA")]: Who is Lynn Dukart?
> [Plaintiff ("P")]: She's a woman I dated for a few months about a year ago.
> [DA]: And you were still married to Ms. Malmquist; correct?
> [P]: That's correct.
> [DA]: And you had sexual relations with Ms. Dukart; correct?
> [P]: That's correct."

Transcript of Proceedings in Malmquist v. Malmquist at 4 (Tennessee Cir. Ct., Memphis) (2007) (attached hereto as **Exhibit E**).[5]  Plaintiff also admitted that he had been having sexual relations with Danielle (who would become his third wife) while he was still married to his prior wife (his second).  Id.

The clear gist of the Adultery Statement is that Plaintiff committed adultery while married, which, based on his own testimony, is substantially true.   Moreover, Tennessee law independently grants immunity regarding fair and true reports of court proceedings, which also immunizes the Adultery Statement in this case.  See Stem v. Gannett Satellite Info. Network, Inc., 866 F. Supp. 355, 358-59 (W.D. Tenn. 1994); see also Langford v. Vanderbilt Univ., 287 S.W.2d 32, 37 (Tenn. 1956).

The Pregnancy and Marriage Statements are also substantially true.  According to the Pregnancy Statement, the couple became pregnant five (5) months after the Jealousy Statement "which was said to have happened 'a few months into the relationship.'" (Complaint ¶ 28(b) (Pregnancy Statement)).  Plaintiff argues in part that the couple met in January 2003 and in May 2003 Danielle told Plaintiff she was pregnant.  (Id.)  The

---

[5] Attached hereto as **Exhibit E** is a transcribed excerpt of Plaintiff's testimony in the case of Malmquist v. Malmquist, CT-001298-05 (Shelby County, Tenn., Cir. Ct.), prepared by the court reporter in that case.

alleged difference in months would not have had a different effect on the mind of the reader and therefore does not impact the statement's substantial truth. See Windsor v. The Tennessean, 654 S.W.2d 680, 686 (Tenn. Ct. App. 1983) (finding no appreciable difference in whether plaintiff attorney "signed" or "issued" a subpoena).

The analysis is the same for the Marriage Statement. Plaintiff challenges the Article's statement that the couple had a four-year marriage. (Complaint ¶ 28(h); Article at 193). Plaintiff alleges that the couple married in 2004 and the divorce (filed in 2005) was granted in 2007. (Id.) Whether or not the couple was married for four or three years (as Plaintiff alleges) would have been of no moment to the reader and therefore the Marriage Statement is substantially true.

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF MENTAL AND EMOTIONAL DISTRESS

Plaintiff's negligent infliction of emotional distress claim is a transparent attempt to restate his defamation claim and end-run the well-established protections afforded the press by the defamation regime. Plaintiff's claim for negligent infliction of mental and emotional distress fails as a matter of law for two independent reasons.

First, negligence is merely a component of the defamation cause of action, not a separate claim. It provides no independent basis to redress reputational and emotional injury based on speech. Hearst is not aware of a single case decided under Tennessee law allowing the recovery of damages for injury to reputation based on speech outside of the defamation context. No wonder: Recognition of a stand-alone negligence claim would permit plaintiffs to end run the numerous stringent limitations on defamation actions designed to protect free speech, including defamatory meaning, falsity and the protection of opinion. Thus, there exists a substantial body of law providing that damages for

18

reputational and emotional injury stemming from speech are not recoverable in negligence actions.  See, e.g., Oliphant v. Richards, 167 S.W.3d 513, 518 (Tex. App. 2005) ("Though a defamation claim not involving a public figure contains a negligence liability standard, that is a component of the defamation claim itself, not a separate claim."); Sanders v. Canal Ins. Co., 95-1002-FR, 1995 WL 584641, at *2 (D. Or. Sept. 25, 1995) (dismissing negligence claim because "[a]n action to secure damages for an injury to reputation caused by the publication of a defamatory statement is an action for defamation, regardless of whether the publication was intentionally, negligently or inadvertently made;" copy attached as **Exhibit F**); Butler v. Delaware Otsego Corp., 610 N.Y.S.2d 664, 666 (N.Y. App. Ct. 1994); Ross v. Gallant, Farrow & Co., 551 P.2d 79, 82 (Ariz. Ct. App. 1976).

Second, even if such a recovery were permissible, Plaintiff here has failed to allege (and cannot establish) that Hearst can be liable to him for negligent infliction of emotional distress.  In Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996), the Tennessee Supreme Court held that in an action for negligent infliction of emotional distress, a plaintiff must present material evidence as to each of five elements of general negligence – duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause – to establish his prima facie case.  See id. at 446.  Recovery is only allowable for "serious" or "severe" emotional injury.  See id.  The Camper Court did not address the existence of a claim for negligent infliction of emotional distress when the gravamen of the alleged injury is to reputation.   Nor is Hearst aware of any other Tennessee case establishing such a claim or duty by the press outside of defamation.  As stated above, such a duty would raise serious First Amendment concerns.

Beyond the absence of any cognizable duty, Plaintiff's claim does not satisfy the requirement of a "serious" or "severe" emotional injury.  See Camper, 915 S.W.2d at 446.  Other than boilerplate language referring to "mental anguish, and emotional distress and strain, injury to his reputation, exposure to public contempt" and the like (Complaint ¶ 36), all Plaintiff alleges is that publication of the Article has caused Plaintiff "to become agitated, to lose sleep, and to worry about its consequences."  Plaintiff's allegations are not sufficient as a matter of law to form the basis of a claim for negligent infliction of mental and emotional distress and should be dismissed.  See, e.g., In re French, 401 B.R. 295, 319-20 (Bankr. E.D. Tenn. 2009) (dismissing negligent infliction claim).

## **CONCLUSION**

For all of the reasons set forth herein, Hearst respectfully requests that this Court dismiss the Complaint, with prejudice, and enter judgment against Plaintiff.

Dated: October 2, 2009

ADAMS AND REESE LLP

By: _____s/ Lucian T. Pera_____
       LUCIAN T. PERA (Tenn. BPR No. 11641)

Attorneys for Defendants
   Hearst Corporation and
   Hearst Communications, Inc.
Brinkley Plaza
80 Monroe Avenue, Suite 700
Memphis, Tennessee 38103
(901) 525-3234
Lucian.Pera@arlaw.com

Of Counsel:
Jonathan R. Donnellan (*pro hac vice* pending)
Kristina E. Findikyan (*pro hac vice* pending)
HEARST CORPORATION
Office of General Counsel
300 W. 57th Street, 40th Floor
New York, NY 10019
(212) 649-2020
jdonnellan@hearst.com
kfindikyan@hearst.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 2, 2009 a copy of the foregoing **Memorandum of Law in Support of Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

_____s/ Lucian T. Pera_____

630827-1