IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| SHEM MALMQUIST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:09-cv-2416-JPM-cgc |
| ) | |
| THE HEARST CORPORATION AND ) | |
| HEARST COMMUNICATIONS, INC., ) | |
| ) | |
| Defendants. ) | |

---

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
MOTION TO DISMISS AMENDED COMPLAINT**

---

Before the Court are Defendant Hearst Corporation and Hearst Communications, Inc.'s (collectively "Hearst" or "Defendants") Motion to Dismiss the Complaint (D.E. 9), filed on October 2, 2009, and Motion to Dismiss Amended Complaint (D.E. 26), filed on November 20, 2009. Plaintiff Shem Malmquist responded in opposition on November 3, 2009 to Defendant's Motion to Dismiss (D.E. 21), and on December 22, 2009 to Defendant's Motion to Dismiss Amended Complaint (D.E. 31). A telephonic hearing was held on the motions on February 26, 2010. Present for Plaintiff was Roger Rutledge, Esq. Present for Defendants were Lucian Pera, Esq., Jonathan Donnellan, Esq., and

1

Kristina Findikyan, Esq.  For the foregoing reasons, Defendants' motions are DENIED in part and GRANTED in part.

I.  **BACKGROUND**

The claims asserted in this case arise from Defendants' publication of an article entitled "Invisible Violence" in Redbook magazine's October 2008 issue.  Plaintiff alleges that the article contains several factual misstatements, which falsely portray him as an emotionally abusive spouse.  (Compl. ¶¶ 19, 28.)  Plaintiff contends that Defendants, the publishers of Redbook magazine, failed to check the accuracy of the information before publishing the article and failed to protect Plaintiff's identity.  (Compl. ¶ 33.)  As a result, Plaintiff claims he has suffered reputational and emotional harm.

The Redbook article was published during National Domestic Violence Awareness Month.  (Pl.'s Mem. of Law in Supp. of Resp. to Defs.' Mot. to Dismiss ("Pl.'s First Resp."), (D.E. 21-1) at 3.)  When introducing the article, the Editor-in-Chief of Redbook compared emotional abuse to physical abuse and stated that she hoped the article would prompt greater awareness of the problem.  (See id.)  A portion of the article is written from the perspective of Danielle Malmquist ("Danielle"), Plaintiff's ex-wife, and recounts her relationship with Plaintiff.  (Defs.' Mot. to Dismiss, Ex. A ("Invisible Violence Article"), (D.E. 9-2).)

2

According to Plaintiff, the article contains several factual misstatements. (Compl. ¶ 28.) In particular, the article describes an incident between Plaintiff and Danielle after she attended a play with another male friend. (Id. ¶ 28(a); Pl.'s First Response, Ex. A ("Invisible Violence Article"), (D.E. 21-2).) The article claims that Plaintiff became "jealous" and "furious" and later "begged" Danielle for forgiveness. (Id.; Pl.'s First Response, Ex. A.) Plaintiff contends that these events never occurred. (Id.)

Additionally, Plaintiff asserts that the article inaccurately reports the circumstances of Danielle's pregnancies and his marriage proposal (id. ¶ 28(b)-(c)); falsely states that he forced Danielle to quit her job and stay home (id. ¶ 28(d)); falsely states that he was prone to "rage-filled explosions" and frequently criticized and belittled Danielle (id. ¶ 28(e)-(f)); falsely implies that Danielle was unable to speak with her friends and family (id. ¶ 28(g)); inaccurately reports the dates and circumstances of Plaintiff's divorce (id. ¶ 28(h)-(i)); falsely claims that Danielle founded an organization to raise public awareness regarding emotionally-abusive spouses (id. ¶ 28(l)); and falsely references a fictitious "legal advocate" who suggested that Danielle was a victim of emotional abuse (id. ¶ 28(j)). Plaintiff contends that the overall effect of these factual misstatements would cause a reader to believe that

3

Danielle endured Plaintiff's emotionally-abusive behavior for years.  (See id. ¶ 28(k).)

Plaintiff also alleges that Defendants failed to take adequate steps to conceal his identity.  The article refers to Danielle Malmquist and one of the couple's two children by name. (Id. ¶¶ 20-21; Pl.'s First Response, Ex. A.)  Details in the article reference Plaintiff's previous residence in Los Angeles, his marriage to Danielle Malmquist, who is pictured in the article, and his employment as a FedEx Pilot.  (Id. ¶ 23; Pl.'s First Response, Ex. A.)  According to Plaintiff, several individuals who read the article identified him as the person referred to as "John" and brought the article to his attention. (Id. ¶ 24.)

As a result of the article's publication, Plaintiff claims that he has suffered severe embarrassment, humiliation, mental anguish, emotional distress, injury to his reputation, exposure to public contempt, and lessened standing in his community. (Id. ¶ 36.)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 440 U.S. 544

4

(2007), a "civil complaint only survives a motion to dismiss if it '[contains] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 630 (6th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).  The Court must "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 902-03 (6th Cir. 2009) (citation omitted).  The Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id. at 903 (citations and quotation marks omitted).

**III. ANALYSIS**

Defendants move to dismiss Plaintiff's libel claim, defamation claim, false light claim, negligent infliction of mental and emotional distress claim, and intentional infliction of mental and emotional distress claim.  The Court will address each challenged claim in turn.  For the purposes of analyzing Defendants' motions, the Court will only consider Plaintiff's complaint and the Redbook article adopted by reference and central to Plaintiff's claims.  See Fed. R. Civ. P. 7(a) and 10(c).

5

### A. Defamation[1]

Defendants contend that Plaintiff's defamation claims should be dismissed because (1) Danielle Malmquist's story is based on non-verifiable opinion, which cannot be proven true or false; (2) the challenged statements are not defamatory and do not refer to the Plaintiff; and (3) the challenged statements are substantially true.

To assert a prima facie case of defamation in Tennessee, the plaintiff must establish that (1) a party published a statement, (2) with knowledge that the statement is false and defaming to the other, or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.  Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999).  For a communication to be defamatory, it "must constitute a serious threat to the person's reputation. . . . The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule.  They must carry with them an element 'of disgrace.'"  Stone River Motors, Inc. v. Mid-South Publ'g Co., 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

---

[1] Plaintiff alleges two separate causes of action for libel and defamation, one statutory and one under Tennessee common law.  Because libel is the written form of defamation, hereinafter the two causes of action will be referred to as "defamation."  See, e.g., Davis v. The Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

6

Whether a communication is capable of conveying a defamatory meaning is a question of law. Pate v. Serv. Merch. Co., 959 S.W.2d 569, 574 (Tenn. Ct. App. 1996). Allegedly defamatory statements should be judged within the context in which they are made. Revis v. McClean, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000). They should be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances. Id. (citation omitted). The United States Supreme Court and Tennessee courts have recognized that opinions are not automatically protected by the United States Constitution. See Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990); Revis, 31 S.W.3d at 253.[2] "Opinion[s] may be actionable if the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Revis, 31 S.W.3d at 253 (citing Restatement (Second) of Torts § 566).

---

[2] In Milkovich, the Court reasoned that a wholesale defamation exception for anything that might be labeled "opinion" would ignore the fact that expressions of "opinion" may often imply an assertion of objective fact. See 497 U.S. at 18. To further articulate this principle, the Court provided an example:

> If a speaker says, "In my opinion John Jones is a liar," he implies knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "[i]n my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

Id. at 18-19.

7

In Tennessee, "liability [for defamation] is not established unless the allegedly defamatory statement is *in fact* understood by a third person as referring to plaintiff."  <u>Stone River Motors</u>, 651 S.W.2d at 717 (alteration in original) (citation omitted).  This requirement may be satisfied by evidence that the communication would have identified the plaintiff to a reasonable reader.  <u>Id.</u>

First, in this case, Defendants' assertion that the contested statements in the article are not defamatory, such as how long the couple dated before becoming pregnant, the length of their marriage, and the existence of a legal advocate, is without merit.  Reading these details so narrowly ignores the overall effect of the article, which implies that Plaintiff is an emotionally-abusive spouse.  It can hardly be questioned that accusations of domestic abuse seriously threaten a person's reputation, carry with them an element "of disgrace," and are capable of holding a person up to public hatred, contempt, or ridicule.

Second, the Court finds that the article identifies Plaintiff to a reasonable reader.  The article refers to Danielle Malmquist and the couple's son, Avin, by name.  (Pl.'s First Resp., Ex. A.)  A picture of Danielle Malmquist is included above the caption stating, "I didn't know my husband's controlling behavior and constant belittlement was abuse."

8

(Id.)  The article also references the couple's life in Los Angeles, their marriage, and Plaintiff's profession as a FedEx pilot.  (Id.)  According to Plaintiff's complaint, several individuals who read the article, including members of his community, coworkers, and others, identified him as the person referred to as "John" and brought it to his attention.  (Compl. ¶¶ 24, 29.)

     Finally, the Court finds that Danielle Malmquist's "opinions" about her abusive relationship may support Plaintiff's defamation claim because they imply the existence of undisclosed defamatory facts justifying her opinions.  When read as a reader would ordinarily understand the article and in the light of the surrounding circumstances, the clear implication is that Plaintiff emotionally abused his ex-wife through his controlling behavior.  The article was published in Redbook magazine during National Domestic Violence Month.  The Editor-in-Chief introduced the article with statements that compared emotional abuse to physical abuse and her hope that the article would prompt greater awareness of this problem.  The article combines personal narratives with statements from psychologists, therapists, and abuse organization leaders, lending credibility to the experiences described in the narratives.  The fact that the article is written from Danielle Malmquist's perspective does not "confirm," as Defendants' suggest, that her story was

9

offered as an opinion rather than assertions of fact. To the contrary, Danielle's opinion that she was emotionally abused is strengthened by the fact that a reasonable reader would assume that as a spouse, she was in a position to have undisclosed, defamatory facts justifying her opinion.

Construing Plaintiff's allegations as true, the article contains several factual misstatements, which create an overall effect of portraying him as a controlling and abusive spouse. Defendants' reliance on the substantial truth of the facts stated in the article is misplaced. The proper question is whether the "[m]eaning reasonably conveyed by the published words is defamatory, 'whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 420 (Tenn. 1978) (quotation omitted). The publication of the complete facts as alleged in Plaintiff's complaint would have raised significant doubts about the factual basis for Danielle Malmquist's defamatory statements.

For the foregoing reasons, the Court DENIES Defendants' motions as they relate to Plaintiff's defamation claims.

**B. False Light**

Defendants contend that Plaintiff's false light claim must fail as a matter of law because Plaintiff cannot plead any damages attributable to his false light claim that are distinct

10

from his defamation claim, and that the potential for overlap between the two claims is a cause for concern. (See Defs.' Mot. to Dismiss at 6-7.) These challenges have been addressed and rejected by the Tennessee Supreme Court.

In West v. Media General Convergence, Inc., 53 S.W.3d 640 (Tenn. 2001), the Tennessee Supreme Court recognized false light invasion of privacy as an actionable tort distinct from defamation. Id. at 645. The West Court noted that while the law of defamation and false light invasion of privacy overlap in some ways, there are differences between the two that warrant their separate recognition. Id.[3] Contrary to Defendants' argument, the West Court found that recognition of false light would not "destabilize current First Amendment protections of speech," id. at 647, because false light standards mirror Tennessee defamation standards. See id. at 647-48 (requiring "actual malice" for false light claims involving a public official or public figure or when the claim is asserted by a private individual about a matter of public concern, and requiring "negligence" for false light claims involving private plaintiffs about matters of private concern).

---

[3] In West, the Tennessee Supreme Court noted that: (1) the truth of contested statements has different effects in defamation and false light cases; (2) defamation claims protect the plaintiff's interest in reputational harm in the outside world, while privacy claims protect the plaintiff's interest in injury to the inner person; and (3) "where the issue is truth or falsity, the marketplace of ideas furnishes a forum in which the battle can be fought [for defamation cases]. . . . In privacy cases, resort to the marketplace simply accentuates the injury." 53 S.W.3d at 645-46.

11

The Tennessee Supreme Court also addressed the concern that one publication may result in multiple recoveries, citing the Restatement (Second) of Torts approvingly. "If, in addition to false light, a plaintiff also asserts an alternative theory of recovery under libel, 'the plaintiff can proceed upon either theory, or both, *although he can have but one recovery for a single instance of publicity*.'" Id. at 647 (citing Restatement (Second) of Torts § 652E cmt. b (1977)).

Based on the Tennessee Supreme Court's analysis in West, the Court finds that Plaintiff may assert his false light claim in addition to his defamation claims. The only issue that remains is whether Plaintiff has established a prima facie case for the false light tort.

The Tennessee Supreme Court articulated the elements of the false light claim as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
>
> (a)   the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b)   the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

West, 53 S.W.3d at 643-44.

Plaintiff's complaint alleges facts that the published article falsely portrays him as an abusive spouse. This type of public image would be highly offensive to a reasonable person. Furthermore, the complaint asserts that Defendants could have "easily checked the accuracy of the information given by Danielle Malmquist" or "prevented the harm it has caused" by changing the names in the article and deleting references to personally-identifiable facts. (Compl. ¶¶ 31-32.) The alleged failure to take such steps satisfies the second element that Defendants acted with knowledge or in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

For these reasons, the Court DENIES Defendants' motions as they pertain to Plaintiff's false light claim.

**C. Intentional Infliction of Mental and Emotional Distress**

Under Tennessee law there are three essential elements to an intentional infliction of emotional distress claim: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). Although no exact legal standard exists for determining whether particular conduct is so intolerable as to be tortious, Tennessee has adopted and applied the

13

high-threshold standard described in the Restatement (Second) of Torts as follows:

> It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Id. at 623 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Although publishing an article which falsely portrays Plaintiff as an abusive spouse may be a serious harm, it does not rise to the level of conduct so outrageous in character and so extreme in degree as to go beyond all bounds of decency. Plaintiff has failed to assert any facts in his complaint to sustain such a claim.

For these reasons, the Court GRANTS Defendants' motions as they pertain to Plaintiff's intentional infliction of emotional distress claim.

### D. Negligent Infliction of Mental and Emotional Distress

A prima facie claim for negligent infliction of emotional distress must include "material evidence as to each of the five elements of general negligence – duty, breach of duty, injury or

14

loss, causation in fact, and proximate [cause]." Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996) (citation omitted). In order to guard against trivial or fraudulent actions, the law provides recovery only for "serious" or "severe" emotional injury. Id. (citation omitted). A "serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Id. (citation omitted).

Applying this standard, the Court finds that Plaintiff has failed to assert facts to support a negligent infliction of emotional distress claim. Plaintiff's only allegations of mental stress state in conclusory fashion that he has been "frustrated and distressed by the Redbook article," and has suffered "severe . . . mental anguish, and emotional distress and strain." (Compl. ¶¶ 29, 36.) Plaintiff's complaint, however, acknowledges that since 2005 he has been involved in a contentious divorce and custody battle with Danielle Malmquist. (See Compl. ¶¶ 13-18.) Even construing Plaintiff's conclusory allegations as true, the complaint does not satisfy the causation elements of his prima facie case because it fails to include any facts linking his mental stress to the publication of the article, as opposed to other admittedly stressful events

15

in his life. Additionally, Plaintiff's complaint does not contain any facts regarding the severity of his mental injury.[4]

For these reasons the Court GRANTS Defendants' motions as they pertain to Plaintiff's negligent infliction of emotional distress claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court DENIES in part and GRANTS in part Defendants' Motions to Dismiss.

SO ORDERED this 26th day of March, 2010.

                                    s/ JON PHIPPS McCALLA  
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

[4] During the February 26, 2010 telephonic hearing, Plaintiff's counsel claimed that Plaintiff was prescribed medication and had to take a leave of absence from work. No facts were presented linking these events to the publication of the Redbook article. Furthermore, these facts were not asserted in either Plaintiff's complaint or amended complaint.